FILED

2010 Mar-04  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **REGINA A. GLOVER,**     ) | |
|                    ) | |
|     **Plaintiff,**     ) | |
|                    ) | |
| **v.**                  ) | **Case No.: 3:09-CV-33-VEH** |
|                    ) | |
| **MICHAEL J. ASTRUE,**     ) | |
| **Commissioner,**       ) | |
| **Social Security Administration,**     ) | |
|                    ) | |
|     **Defendant.**     ) | |

---

## MEMORANDUM OPINION

Plaintiff Regina A. Glover ("Ms. Glover") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. Glover timely pursued and exhausted her administrative remedies available

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g),

§ 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Glover was a 34-year-old female at the time of the supplemental hearing

before the administrative law judge (hereinafter "ALJ") held on February 14, 2008.

(Tr. 53, 49).  The initial hearing that was continued took place on October 29, 2007.

(Tr. 51).

Ms. Glover completed 3 years of college.  (Tr. 53).  Her focus there was in

accounting and theater.  (*Id.*).  Ms. Glover's past gainful work experiences include

cashier, packer/packaging, and assistant manager/clerk positions.  (Tr. 68-69).

Ms. Glover initially alleged that her disability period began on November 18,

2004.  (Tr. 29).  As amended, Ms. Glover claims disability beginning on June 1, 2006.

(*Id.*).  Ms. Glover suffers from Chiari malformation, Type I;[3] headaches; depressive

disorder; anxiety disorder; mathematics disorder (a learning disorder); and attention

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]  Chiari malformation "is characterized by a small or misshapen posterior fossa (the compartment in the back of the skull), a reduction in the cerebrospinal fluid pathways and a protrusion of the cerebellar tonsils through the bottom portion of the skull (foramen magnum) into the spinal canal." (Tr. 269).  Symptoms may include "severe head and neck pain."  (*Id.*).

deficit hyperactivity disorder ("ADHD").  (Tr. 32).

Ms. Glover protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on May 12, 2006.  (Tr. 29).  The DIB and SSI claims were denied initially on June 21, 2006.  (Tr. 29).  Ms. Glover timely filed a request for a hearing on July 18, 2006.  (Tr. 29).

After a continuance, the supplemental hearing before the ALJ was held on February 14, 2008.  (Tr. 29, 49).  The ALJ concluded Ms. Glover was not disabled as defined by the Social Security Act and denied both of her applications on March 22, 2008.  (Tr. 29-43).  Ms. Glover subsequently filed a timely request for review with the Appeals Council (Tr. 6), and on November 21, 2008, it denied review, which resulted in the ALJ's decision being the final decision of the Commissioner.  (Tr. 2).

On January 8, 2009, Ms. Glover filed her complaint with this court asking for review of the ALJ's decision.  (Doc. 1).  This court has carefully considered the record, and for the reasons stated below, remands the Commissioner's denial of benefits for further evidentiary development and consideration.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts*

*v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

4

impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)     whether the claimant can perform her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further

show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Glover had not engaged in substantial gainful activity since the amended onset of her disability on June 1, 2006.  (Tr. 31).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments:  Chiari malformation, Type I, headaches, depressive disorder, anxiety disorder, mathematics disorder (a learning disorder), and attention deficit hyperactivity disorder[.]"  (Tr. 32 (citations omitted)).  Accordingly, the ALJ concluded that Ms. Glover satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Glover did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 38).  Ms. Glover does not dispute this finding on appeal.

The ALJ evaluated Ms. Glover's residual functional capacity ("RFC") at step four, and the claimant was found to have the ability "to perform less than a full range

of light work[.]"   (Tr. 38).   The ALJ then explained Ms. Glover's vocational limitations:

> The claimant is prohibited from climbing ropes, ladders, or scaffolding, and she cannot work around unprotected heights or dangerous, moving unguarded machinery.   Placement in a low-stress supportive work situation is recommended and the claimant would also require accommodations in the area of math in some types of employment settings.   The claimant is limited to performing simple, routine repetitive tasks involving simple, work-related decisions and in general relatively few workplace changes.   Claimant is also limited to occasional interaction with supervisors, coworkers, and the general public.

(Tr. 38).   The ALJ then determined that Ms. Glover was "unable to perform any past relevant work[.]"   (Tr. 41 (citations omitted)).

Because of the ALJ's finding that Ms. Glover was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis.   (Tr. 42).   Relying upon testimony from the vocational expert, the ALJ concluded that Ms. Glover could perform "occupations such a parts inspector . . . and as a labeler" and that a significant amount of these positions existed in the national economy.   (Tr. 42).   Accordingly, the ALJ concluded Ms. Glover was not disabled as defined by the Social Security Act, at any time from June 1, 2006, through March 22, 2008, the date of the ALJ's decision, and denied both her DIB and SSI claims.   (Tr. 42-43).

## **ANALYSIS**[5]

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

In this appeal, Ms. Glover raises a host of issues, including the validity of the ALJ's RFC determination. (Doc. 11 at 1-2). The court turns to the RFC issue first, and agrees with Ms. Glover that under the circumstances of her case, the ALJ committed reversible error.[7]

---

[5] The undersigned has recently rendered another decision which similarly addresses the inadequacies of the ALJ's RFC determination from which the analysis and disposition of this case persuasively flow. *See Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence).

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7] As a result, the court does not reach the merits of the other issues raised on appeal.

I.     **IN THE ABSENCE OF A MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MS. GLOVER CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Regarding her RFC, Ms. Glover specifically maintains in part:

> The ALJ concluded that Ms. Glover "has the residual functional capacity to perform less than a full range of light work." In making this assessment, the ALJ stated, "Even though the State Agency medical consultant and disability examiner neither examined nor treated the claimant, some but not great weight has been given to those opinions as they were consistent with the medical evidence available at the time they were reached . . ." However, the physical assessment was not completed by a medical consultant, but rather a lay disability examiner. <u>As the record is devoid of any medical assessments, whether examining, treating, or non-examining, which supports the ALJ's physical RFC assessment, it cannot be sustained</u>.

(Doc. 11 at 5 (emphasis added) (citations and footnotes omitted)).

In support of his RFC determination, the ALJ states regarding the opinion evidence contained in the record:

> Consideration has been given to the June 2006 opinions of the State Agency medical consultant and the disability examiner regarding the claimant's mental and physical limitations (Exhibit 6F and 7F). <u>Even though the State Agency medical consultant and disability examiner neither examined nor treated the claimant, some, but not great weight has been given to those opinions</u>, as they were consistent with the medical evidence available at the time they were reached; however, additional evidence received since that time indicates that the claimant has had some additional limitations other than those that had previously been determined. <u>Some weight has also been given to the opinion of Dr. Rogers</u> (Exhibit 13F). Even though Dr. Ray only saw the claimant on

9

one occasion and he did not treat the claimant, his opinion is based upon a thorough evaluation and it is consistent with the medical evidence of record.

(Tr. 41(emphasis added)).

The court has studied Exhibits 6F, 7F, and 13F, which the ALJ expressly relied upon in support of Ms. Glover's RFC of light work with restrictions.  In sum, none of these exhibits, whether considered separately, collectively, or in conjunction with other record evidence, provides substantial evidence in support of the ALJ's RFC determination that Ms. Glover is a capable of performing a reduced range of light work given her severe impairments of Chiari malformation, Type I, headaches, depressive disorder, anxiety disorder, mathematics disorder (a learning disorder), and attention deficit hyperactivity disorder.  Relatedly, the record lacks a  medical source opinion[8] that indicates what type of work Ms. Glover is capable of performing or delineates what vocational restrictions are appropriate given her severe impairments.

Two of the referenced exhibits relate to Ms. Glover's mental health.  Exhibit 6F is a Psychiatric Review Technique dated June 20, 2006, and signed by Dr. Frank J. Nuckols.  (Tr. 239-252).  Dr. Nuckols's report indicates that Ms. Glover suffers

---

[8]  "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p.

10

from affective (depression) and anxiety-related disorders, which are <u>not severe</u> and only result in a mild degree of functional limitation.  (Tr. 239, 242, 244, 249, 251).  Relatedly, nowhere in this document does Dr. Nuckols suggest that a range of reduced light work or any job-related restrictions are appropriate for Ms. Glover in light of his paper review of her mental abilities.

Moreover, Dr. Nuckols's conclusions are in sharp contrast to the ALJ's determination that <u>both Ms. Glover's depression and anxiety disorder are severe impairments</u>.  Also, Dr. Nuckols's review does not reference, much less encompass, the potential functional impact of  Ms. Glover's other conditions that the ALJ determined were severe, including Chiari malformation, Type I, headaches, mathematics disorder (a learning disorder), and attention deficit hyperactivity disorder.  Furthermore, even the ALJ partially discounted Dr. Nuckols's opinion giving it "some, but not great weight" because he "neither examined nor treated" Ms. Glover.  Accordingly for all these reasons, Dr. Nuckols's report does not provide substantial evidence in support of the ALJ's RFC determination that Ms. Glover is capable of performing a reduced range of light work.

Exhibit 13F is a set of records relating to a psychological evaluation performed on Ms. Glover on July 13, 2007, by Dr. Jon G. Rogers, a clinical psychologist.  (Tr. 363-70).   Within this documentation, while Dr. Rogers does make some

11

recommendations as to the type of work environment that Ms. Glover could function in, *i.e.*, placing her "in a low-stress, supportive work situation" (Tr. 367), his suggested restrictions do not factor in any physical assessment of Ms. Glover and he offers no opinion about the exertional level of work she is capable of performing. Therefore, Dr. Rogers's report does not provide substantial evidence in support of the ALJ's RFC determination that Ms. Glover is capable of performing a reduced range of light work.

Exhibit 7F is a Physical Residual Functional Capacity Assessment completed on Ms. Glover by Debbie Powell, a non-physician, disability examiner on June 20, 2006. (Tr. 253-260). The report takes into account Ms. Glover's primary diagnosis of Chiari malformation of the brain, but lists no secondary conditions. (Tr. 253). Evidently, based upon her paper review of the raw medical data and without the benefit of a medical source statement "regarding the claimant's physical capacities" (Tr. 259), Ms. Powell recommends certain exertional as well as other limitations for Ms. Glover. (Tr. 254, 255, 257). Ms. Powell finds Ms. Glover's subjective symptoms to be "partially credible." (Tr. 258).

The report concludes: "RATE LIGHT RFC PER CONSULT WITH SAMC, DR[.] JENNINGS ON ROUNDS." (Tr. 260). Once again, this evaluation is partially discounted by the ALJ giving it "some, but not great weight" because Ms. Powell

"neither examined nor treated" Ms. Glover.  <u>However, this is the only document contained in the record that even suggests what type of work Ms. Glover is physically capable of performing</u>.  Now, this court must decide whether such an evaluation conducted by a lay examiner based on a paper review provides substantial evidence to support the ALJ's RFC determination.  Under the circumstances of this case, the court concludes that it does not.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)  ("The ALJ failed to refer to-and this Court has not found-<u>a proper, medically determined RFC</u> in the record.") (emphasis added).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers['s] medical treatment history, <u>it lacks any physical capacities evaluation by a physician</u>. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. <u>An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person</u>. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996).  <u>In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required</u>. *Id.*  <u>In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities</u>

<u>evaluations</u>.  Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret raw data in a medical record</u>.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

In this instance, because no <u>medically-determined RFC</u> exists in the record,[9] the ALJ has either apparently based the RFC finding upon his interpretation of raw

---

[9]   The court is not persuaded by Defendant's argument that "although Dr. Nuckols did not sign Ms. Powell's assessment, it can be assumed that he concurred with her findings."  (Doc. 12 at 11 n.6).  In particular, Defendant offers no case authority for the proposition that, because Dr. Nuckols "signed the disability determination and transmittal form completed on the same day" such an evidentiary leap is proper and that, as a result, substantial evidence supports the ALJ's RFC finding because it then would be based upon a medically-determined RFC.

medical data,[10] Ms. Powell's interpretation of the same, or some combination of the two.  Comparable to *Rogers*,  *Manso-Pizarro*, and other similar cases,  a lay person (whether an ALJ or a disability examiner, such as Ms. Powell) is not able to discern Ms. Glover's work-related functional abilities based upon the unfiltered information contained in her medical records.

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on her by a physician, the record has not been adequately developed.  *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Alternatively, even if it is appropriate for an ALJ to rely upon a lay examiner's physical residual functional capacity assessment in making an RFC administrative

---

[10]  The court notes that Defendant maintains that "the ALJ did not ultimately rely on Ms. Powell's opinion." (Doc. 12 at 11 n.7).  Instead, Defendant contends that "[t]he ALJ's decision was thus based on that later evidence, and also his own review of the evidence considered by Ms. Powell." (*Id.* (citation omitted)).  However, the fact that the ALJ may not have relied on Ms. Powell's assessment does not cure his inadequately supported RFC determination.

finding, here such reliance is misplaced because, as the ALJ acknowledged, "additional evidence received since that time indicates that the claimant has had some additional limitations other than those that had previously been determined." (Tr. 41). As a result, by the ALJ's own admission, the lay opinion provided by Ms. Powell about Ms. Glover's physical capacity to perform light work is out of date and/or incomplete in light of her additional limitations. Thus, it cannot constitute substantial evidence in support of the RFC determination.

Therefore, under either scenario, the ALJ's determination that Ms. Glover can perform less than a full range of light work is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## <u>CONCLUSION</u>

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 4th day of March, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge